**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Valentino GAGLIARDI, Appellee.**

**Commonwealth of Pennsylvania, Appellant**

v.

**Romeo P. Gagliardi, Appellee.**

**Commonwealth of Pennsylvania, Appellant**

v.

**Romeo Gagliardi, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2015.

Filed Nov. 20, 2015.

Hugh J. Burns, Jr., Assistant District Attorney and Michael L. Erlich, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

William J. Ciancaglini, Philadelphia, for appellees.

BEFORE: MUNDY, OLSON and WECHT, JJ.

OPINION BY OLSON, J.:

The Commonwealth of Pennsylvania appeals as of right from the trial court's

February 21, 2014 orders, granting the motions to suppress that were filed by Romeo Phillip Gagliardi, Romeo J. Gagliardi, and Valentino Gagliardi (hereinafter, collectively, "the Gagliardis"). We vacate the trial court's orders and remand.

On August 24, 2012, the Commonwealth applied for a warrant to search the residence of 2627 Emily Street, in Philadelphia. Attached to the application was an affidavit that was sworn by Philadelphia Police Officer Bruce Cleaver. At the time Officer Cleaver swore the affidavit, Officer Cleaver was a 14–year police veteran and was assigned to the Narcotics Bureau. As Officer Cleaver declared in the affidavit, during his time as a police officer, he was "involved in hundreds of narcotics arrests" and received specialized narcotics-related training given by the Philadelphia Police Department. Search Warrant and Affidavit, 8/24/12, at 2.

As Officer Cleaver averred, the confidential informant ("CI") in this case provided him with the following tip: "a [white male] in his 30's who goes by the name Romeo lives at 2627 Emily [Street] and sells cocaine in South Philadelphia." [1] Using the CI, Officer Cleaver then conducted two controlled purchases of narcotics from Romeo. The first controlled purchased occurred on August 23, 2012 and transpired in the following manner: the officers gave the CI $100.00 in marked currency and watched the CI contact Romeo to set up a drug transaction; the CI went to 26th and Dudley Street and waited for Romeo under a tree; Romeo exited 2627 Emily Street and walked up to the CI; the CI gave Romeo $100.00 and Romeo gave the CI a clear packet containing cocaine; and, the two parted ways. *Id.*

Following the transaction, the police observed Romeo engage in a second transac-

tion, where Romeo was again the seller. According to the affidavit, after the CI and Romeo parted, Romeo spoke on a cell phone and "walked back to the tree where he met the [CI]." A white Honda parked under the tree, Romeo entered the passenger-side of the vehicle, the driver handed Romeo money, and Romeo handed the driver a clear packet. Following the transaction, Romeo "exited the Honda[,] walked back to 2627 Emily [Street,] and entered the front door." *Id.*

The next day, Officer Cleaver used the CI to conduct a second controlled purchase of narcotics from Romeo. With respect to this second controlled purchase: the officers gave the CI $100.00 in marked currency; the CI contacted Romeo; the CI went to 26th and Dudley Street; Romeo exited 2627 Emily Street and walked up to the CI; the CI gave Romeo $100.00 and Romeo gave the CI a clear packet containing cocaine; and, Romeo "walk[ed] back into 2627 Emily [Street]." *Id.*

The affidavit concluded by stating that the CI was reliable because the CI had, in the past, "made buys which led to numerous confiscations of narcotics, [United States currency] and paraphernalia." *Id.*

Officer Cleaver swore to the above facts on August 24, 2012—which was the same day as the second controlled purchase. Also on August 24, 2012, the issuing authority approved the search warrant for 2627 Emily Street and the police executed the search warrant for the residence. As the Commonwealth notes:

Inside the residence, the police found two pounds of high grade marijuana, 136 grams of cocaine, $9,682[.00] in cash, a digital scale, a razor blade, a PGW bill in the name of Valentino Gagliardi, and a 9

---

1. The search warrant stated that the "name of owner, occupant or possessor of" 2627 Emily

Street was "Fracis Angelo." Search Warrant and Affidavit, 8/24/12, at 1.

millimeter Sig Sauer handgun loaded with [11] live rounds. Romeo Phillip Gagliardi [ ]—the Romeo who was observed selling cocaine to the informant—was arrested. Also present when the warrant was executed were his son Romeo J. Gagliardi [ ] and Valentino Gagliardi. They were likewise taken into custody.

Commonwealth's Brief at 6.

On February 21, 2014, the Gagliardis made joint, oral motions to suppress the evidence in their cases. The Gagliardis argued that the search warrant for 2627 Emily Street was not supported by probable cause, as the affidavit of probable cause did not describe the basis of the CI's knowledge and did not establish a nexus between the contraband and the house. N.T. Motion, 2/21/14, at 5.

On February 21, 2014, the trial court granted the Gagliardis' motions and suppressed the evidence seized from 2627 Emily Street. *Id.* at 14. Within the trial court's later-filed opinion, the trial court declared that the search warrant was defective because there were "insufficient facts contained in the affidavit of probable cause that could allow anyone to draw the legally correct deduction that there was a strong probability that illegal activities were being conducted from the premises searched[ ] or that any evidence of that illegal activity would be found there at the time of the search." Trial Court Opinion, 6/18/14, at 16.

First, the trial court declared, the affidavit was insufficient because it failed to establish that the tip was reliable. *Id.* at 7. With respect to this issue, the trial court declared that the affidavit: "did not say how or when the [CI] became aware that Romeo lived at 2627 [Emily Street] and was selling drugs;" did not specify when the CI informed the police of Romeo's address or that Romeo was selling drugs;

did not describe how the CI contacted Romeo to arrange the buys; and, stated only that the CI previously "made buys" for the police, which "assisted in some unspecified number of previous confiscations." *Id.* Since the trial court concluded that the tip was unreliable, the trial court held that the affidavit failed to "indicat[e] that Romeo did, in fact, live or have some other possessory interest in" 2627 Emily Street. *Id.* at 7–8. According to the trial court, "[f]or all one can glean from [the affidavit] ... [Romeo] could simply have been visiting someone [at 2627 Emily Street] and made the [ ] sales with whatever drugs he happened to have on his person while he just happened to be at that particular location." *Id.* at 6–7.

Second, the trial court concluded that the affidavit did not establish a nexus between 2627 Emily Street and the contraband. *Id.* at 6. According to the trial court, this was because: none of the transactions occurred inside of the house; "the [CI] did not say that Romeo was selling drugs from, or storing them at, 2627 Emily [Street];" "[a]side from the fact that [Romeo] was seen leaving and reentering the house before and after making drugs sales, there is no indication whatsoever that he was, in fact, connected to the premises in any legally controlling capacity;" and, following the first controlled transaction between the CI and Romeo, Romeo conducted a second transaction without returning to the house, "thus indicating that Romeo did not have to return to the premises to replenish his stock and could very possibly have only been selling whatever drugs he happened to have on his person at any given time." *Id.* at 6–7.

The Commonwealth filed timely notices of appeal from the trial court's interlocutory suppression orders and, within each notice of appeal, the Commonwealth certified that the relevant suppression order

terminated or substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d).[2] Now before this Court, the Commonwealth raises the following claim:

.Did the [trial] court err by invalidating a search warrant for a house on the ground that the police supposedly lacked probable cause despite arranging controlled buys in which a defendant was observed leaving the house, selling cocaine, and then returning to the house on two days in succession?

Commonwealth's Brief at 3.

After viewing the evidence in a common-sense, non-technical manner, we conclude that substantial evidence in the record supports the issuing authority's decision to issue a warrant—and that the trial court thus erred when it granted the Gagliardis' motions to suppress.

To begin, we conclude that the trial court's faulty suppression ruling was occasioned by the fact that the trial court applied an incorrect standard of review to the issuing authority's probable cause determination.

According to our Supreme Court, when deciding whether to issue a search warrant, "the task of the issuing authority is simply to make a practical, common-sense

decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 925 (1986), *quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, as our Supreme Court held, with respect to a court that is reviewing an issuing authority's probable cause determination:

[the] reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant.... In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010) (internal citations, quotations, and corrections omitted).[3]

Thus, although "[r]easonable minds frequently may differ on the question

---

**2.** On October 3, 2014, we granted the Commonwealth's petition to consolidate the appeals involving the individual Gagliardis. Order, 10/3/14, at 1.

**3.** As we have stated, with respect to an appeal from a suppression court ruling:

Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo*.

*Commonwealth v. James*, 620 Pa. 465, 69 A.3d 180, 186 (2013) (internal quotations, citations, and corrections omitted).

In the case at bar, the suppression court made no factual findings. Rather, it was tasked with making the **legal determination** as to whether—when looking at the four corners of the affidavit—"a substantial basis exists to support the magistrate's probable cause finding." Since "we are not bound by the suppression court's legal rulings," our standard of review of the suppression court's ruling is *de novo*. *Id*. Thus, as was true with the suppression court, we are required to "determine whether or not there is substantial evidence in the record supporting the [issuing authority's] decision to issue a warrant." *Jones*, 988 A.2d at 655.

whether a particular affidavit establishes probable cause," the deference afforded a magistrate judge ensures that, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [the trial court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Miknevich*, 638 F.3d 178, 182 (3rd Cir.2011) (internal citations and quotations omitted).

In this case, the trial court's stated reasoning reveals that it failed to afford deference to the issuing authority's probable cause determination and that it might have even held the Commonwealth to a higher burden than "probable cause."

During the pre-trial motion hearing, the trial court declared: "the question for the [trial c]ourt is whether there is a fair possibility that contraband or evidence of a crime will be found in the particular place." N.T. Motion, 2/21/14, at 13. Utilizing this standard, the trial court then suppressed the evidence that was seized from 2627 Emily Street. *Id.* at 14. However, under our Supreme Court's precedent, the trial court's statement of the question before it was incorrect. Certainly, as phrased, the trial court's statement suggests that it believed it was required to conduct a de novo review of the issuing authority's probable cause determination. As our Supreme Court held, however, the issue before the trial court was not "a *de novo* review of the issuing authority's probable cause determination, but [was] simply ... whether or not there is **substantial evidence** in the record supporting the decision to issue a warrant." *Jones*, 988 A.2d at 655 (emphasis added).

Further, within the trial court's opinion, the trial court apparently holds the Commonwealth to a higher burden than proba-

ble cause. Indeed, at various times in the trial court's opinion, the trial court declares that the affidavit of probable cause was required to establish: "that a specific criminal act is **very probably** being conducted at a specific location;" "that there was a **strong probability** that illegal activities were being conducted from the premises searched;" and, "that there was a **preponderant probability** that the items to be seized or 'Romeo' would be at the residence searched." *See* Trial Court Opinion, 6/18/14, at 6 and 16 (emphasis added). Again, the issue before the trial court was "simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant." *Jones*, 988 A.2d at 655. However, even if the trial court were conducting a *de novo* review of the search warrant, probable cause merely required that the affidavit establish "a **fair probability** that contraband or evidence of a crime will be found in a particular place." *Gray*, 503 A.2d at 925 (emphasis added).

We conclude that, when the issuing authority's probable cause determination is reviewed under the proper standard, it is apparent that substantial evidence in the record supports the issuing authority's decision to issue a warrant.

First, the trial court erred in concluding that the affidavit fails to establish that the CI's tip was reliable. Our Supreme Court explained:

a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, nontechnical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant him-

self participated in the criminal activity. The corroboration by police of significant details disclosed by the informant in the affidavit of probable cause meets the *Gates* threshold. *Commonwealth v. Sanchez*, 589 Pa. 43, 907 A.2d 477, 488 (2006), *quoting United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir.2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information.") ... The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

*Commonwealth v. Clark*, 611 Pa. 601, 28 A.3d 1284, 1288 (2011) (emphasis omitted) (some internal quotations and citations omitted).

Here, the trial court concluded that this tip was unreliable because the affidavit failed to disclose the basis of the CI's knowledge and because the affidavit merely declared that the CI had, in the past, "made buys which led to numerous confiscations of narcotics, [United States currency] and paraphernalia." Trial Court Opinion, 6/18/14, at 7. We agree that the affidavit fails to state the basis of the CI's knowledge and does not establish the reliability of the CI, himself. *See* Wayne R. LaFave, 2 SEARCH & SEIZURE § 3.3(b) (5th ed.) ("[t]he mere fact that the informant was given money and sent to a particular place to meet a suspect and then returned with narcotics, all under the close surveillance of police, alone indicates very little about the informer's credibility in the role

of a reporter of facts when he is not under such close supervision. However, it would be a different matter if the informant had initiated this prior activity, as where he advises the officer that he can make a buy from a certain individual and then does so"). Yet, in arriving at its final conclusion that the tip was unreliable, the trial court discounted the fact that the police independently corroborated significant portions of the CI's tip, by utilizing the CI to conduct two controlled purchases of cocaine from "Romeo" on two consecutive days. Thus, we conclude that the trial court erred when it declared that the CI's tip was unreliable.

█ The CI's tip in this case consisted of the following five parts: "[1)] a [white male; 2) ] in his 30's[; 3) ] who goes by the name Romeo[; 4) ] lives at 2627 Emily [Street; and, 5)] sells cocaine in South Philadelphia." Search Warrant and Affidavit, 8/24/12, at 2. Looking to the four corners of the affidavit, the police independently corroborated almost the entirety of the tip, since—on two consecutive days— the police conducted two controlled purchases of cocaine, whereby the police witnessed: a white male, who was "identified by the [CI] as the male he knew as Romeo," exit 2627 Emily Street, walk up to the CI, sell the CI cocaine, and then walk back into 2627 Emily Street. *Id.* This independent police corroboration of significant aspects of the tip provided the issuing authority with a substantial basis for concluding that the entirety of the tip was reliable. *See Gates*, 462 U.S. at 244, 103 S.Ct. 2317 (holding that if "an informant is right about some things, he is more probably right about other facts"); *Clark*, 28 A.3d at 1288 ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent

corroboration by police of the informant's information").

Indeed, in concluding that the affidavit failed to "indicat[e] that Romeo did, in fact, live or have some other possessory interest in" 2627 Emily Street, the trial court not only failed to give deference to the issuing authority's probable cause determination, but the trial court also failed to view the totality of the circumstances in a practical, common-sense manner. Like the trial court said, it is, of course, possible that "Romeo" might have "simply [ ] been visiting someone [at 2627 Emily Street] and made the [ ] sales with whatever drugs he happened to have on his person while he just happened to be at that particular location." Trial Court Opinion, 6/18/14, at 6–7. However, given that the CI told the police that Romeo "lives at 2627 Emily [Street]," that the police independently corroborated other, significant aspects of the CI's tip, and that—on two consecutive days—the police watched as Romeo exited 2627 Emily Street, completed the controlled purchase, and then returned to 2627 Emily Street, we conclude that—viewing the totality of the circumstances in a practical, common-sense manner—the issuing authority had substantial evidence to believe that, at the time the search warrant was authorized, "Romeo" lived at 2627 Emily Street and sold cocaine in South Philadelphia. The trial court's conclusion to the contrary was erroneous.

■ The trial court also concluded that the affidavit of probable cause did not establish a nexus between the Gagliardis' house and the sale or storage of contraband. Trial Court Opinion, 6/18/14, at 6–7.

However, viewing the totality of the circumstances in a practical, common-sense manner, we conclude that substantial evidence in the record supports the issuing authority's conclusion that there was a "fair probability" that contraband would be discovered in 2627 Emily Street.

As explained above, the issuing authority had a substantial basis to conclude that "Romeo" lived at 2627 Emily Street and sold cocaine in South Philadelphia. Further, the affidavit declares that, on two consecutive days, the police witnessed the CI contact Romeo and, in response, Romeo exited 2627 Emily Street, walked up to the CI, sold the CI cocaine, and then returned to 2627 Emily Street. Viewing these facts in a practical, common-sense manner, we conclude that these facts constitute significant evidence that Romeo was using his home at 2627 Emily Street as the **base** of illicit operations. Indeed, with respect to both sales, Romeo left from his house, went directly to the meeting point, sold the CI cocaine, and then either made an additional sale and walked back to his house or simply walked back to his house. Based on these facts, we conclude that the issuing authority had a substantial basis for determining that Romeo stored his cocaine inside of his 2627 Emily Street base and that, when he returned to his base, he placed the contraband buy-money inside of 2627 Emily Street. Therefore, the issuing authority possessed a substantial basis for determining that there was a fair probability that contraband (either cocaine or buy-money) would be found at 2627 Emily Street.[4]

4. Within the trial court's opinion, the trial court makes much of the fact that, following the first controlled transaction between the CI and Romeo, Romeo conducted a second transaction (where he was again the seller) without returning to the house. According to the trial court, this "indicat[es] that Romeo

did not have to return to the premises to replenish his stock and could very possibly have only been selling whatever drugs he happened to have on his person at any given time." Trial Court Opinion, 6/18/14, at 6–7. We reject the trial court's *de novo* re-interpretation of the facts. Indeed, the fact that Ro-

In arriving at our conclusion, we recognize our opinions in *Commonwealth v. Kline*, 234 Pa.Super. 12, 335 A.2d 361 (1975) (*en banc*), and *Commonwealth v. Way*, 342 Pa.Super. 341, 492 A.2d 1151 (1985). However, neither opinion controls the resolution in the case at bar. Certainly, in *Kline*, this Court held that the affidavit of probable cause failed to establish a nexus between the drug dealer's apartment and the contraband because the affidavit omitted certain facts concerning the single, private transaction between the drug dealer and two girls. We held that these omitted facts included: "where the transaction [between the dealer and the two girls] took place, how long it took, how long [the dealer] was gone, [and] what led the girls to conclude that he had gone to his apartment [to retrieve the drugs]." *Kline*, 335 A.2d at 364. In the case at bar, however, we are dealing with two controlled transactions—that were witnessed by the police and recounted, in detail, in the affidavit of probable cause. Further, the affidavit in the case at bar clearly recites "where the [controlled] transaction[s] took place" and "what led [the police] to conclude" that Romeo left his home prior to the drug sales and then returned to his home after the drug sales. *See id.* *Kline* is thus inapposite to the facts of this case.

Moreover, *Way* is of even less persuasive value than *Kline*. In *Way*, the affidavit of probable cause merely declared that: the defendant was a drug dealer; an "al-

leged [drug] transaction occurred in [the defendant's] blue van along a country road[; and, a]fter the alleged [drug] transaction, police followed the blue van to a driveway of a property" that was owned by the defendant. *Way*, 492 A.2d at 1152–54. Confronted with this affidavit, the *Way* Court held that there were "[insufficient] facts to believe that drugs would be found" in the defendant's house and that the search warrant for the defendant's house was thus defective. *Id.* at 347.

*Way* is inapplicable to the case at bar. Indeed, in *Way*, the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his blue van—while in the case at bar, the facts establish that the Romeo's base of operations for his drug dealing was his house at 2627 Emily Street.

We thus conclude that the issuing authority possessed a substantial basis for determining that there was a fair probability that contraband would be found at 2627 Emily Street. We vacate the trial court's orders in these cases and remand.

Orders vacated. Cases remanded. Jurisdiction relinquished.

Judge MUNDY joins this Opinion.

Judge WECHT files a Dissenting Opinion.

DISSENTING OPINION BY WECHT, J.:

In this consolidated appeal, the Commonwealth appeals the trial court's Febru-

---

meo did not need to return to 2627 Emily Street to replenish his cocaine—so that he could conduct a **single additional transaction**—might simply mean that Romeo did not know how much cocaine the CI wished to purchase and that, following the transaction, Romeo had enough cocaine on hand to conduct an additional transaction. Regardless, it is not the role of either this Court or the trial court to conduct a *de novo* review of the issuing authority's probable cause determina-

tion. We are simply to determine "whether or not there is substantial evidence in the record supporting the decision to issue a warrant." *Jones*, 988 A.2d at 655. Here, the fact that Romeo was able to conduct two separate sales without returning to 2627 Emily Street does not lessen the probability that Romeo's base of operations was 2627 Emily Street or that contraband would be found at 2627 Emily Street.

ary 21, 2014 order suppressing evidence seized pursuant to the execution of a search warrant for want of probable cause. The learned Majority finds error in the trial court's reasoning for suppressing the evidence in a multitude of ways, including the trial court's mischaracterization of, and, consequently, erroneous application of, the standard of review, as well as the court's conclusion that the confidential informant was unreliable. I have no significant disagreement with those portions of the Majority's opinion.

However, I depart with the Majority on the crucial issue in the case: whether the information contained in the affidavit of probable cause demonstrated a fair probability that additional narcotics would be found in the residence in question. In other words, in my view, the Majority incorrectly concludes that the information contained within the four corners of the affidavit established a nexus between drug transactions on the street and Romeo Gagliardi's residence. Hence, I respectfully dissent.

On August 23 and 24, 2012, Philadelphia Police Officer Bruce Cleaver, along with his partner, Officer Stevens, conducted two controlled purchases of narcotics using a confidential informant. The informant had indicated to Officer Cleaver that a white male named "Romeo," who was residing at 2627 Emily Street, was selling drugs in the South Philadelphia area. On the two days in question, the officers provided the confidential informant with marked currency, and observed as the informant contacted "Romeo" and set up a drug transaction. The informant and "Romeo" agreed to conduct the transactions under a tree near 26th and Dudley Streets. On both occasions, the informant went to the tree and waited for "Romeo," who would exit the Emily Street residence and walk to the tree. Once both parties were there, the informant would hand the marked currency to "Romeo," and "Romeo" would hand the informant a clear packet, which was later determined to contain cocaine. "Romeo" then would walk away from the tree. Notably, after the first transaction, "Romeo" was observed making a second transaction in the same location, but this time the deal occurred inside of a vehicle that had pulled up to the location. After he made the second deal with the person in the vehicle, "Romeo" then returned to 2627 Emily Street. After the transaction that occurred on the second day with the informant, "Romeo" went directly back to 2627 Emily Street.

Based upon his observation, Officer Cleaver applied for a search warrant for the residence located at 2627 Emily Street. Officer Cleaver also prepared an affidavit of probable cause, which he submitted alongside the warrant application. Officer Cleaver set forth the following in the affidavit of probable cause:

I, P/O Bruce Cleaver # 2706, your Affiant, am presently assigned to Narcotic Field Unit South. I have been a sworn Police Officer since November 1998. In my capacity of Police Officer, I have been assigned to the 25th Dist Net, and Highway Patrol. In my course of assignment as Police Officer, I have been involved in hundreds of narcotic arrests. Since being assigned to the Narcotic Bureau, I have worked numerous investigations for violations of the Pennsylvania Controlled Substance Act of 1972. My involvement in these investigations has entailed surveillances, undercover purchases, and the preparation of search and seizure warrants by myself. I have received specialized narcotics-related training given by the Philadelphia Police Department. I have also been trained in courses given on the Federal and State level. My training and experience

have made me familiar with the ways in which narcotics are packaged for sales on the street and from houses for illegal sales and distribution. I have received training in the handling of confidential informants being utilized for the purpose of undercover investigations.

Your Affiant, P/O Cleaver #2706, received information from C/I #1349. C/I stated a W/M in his 30's who goes by the name Romeo lives at 2627 Emily Street and sells cocaine in South Philadelphia. On 8-23-12 P/O Cleaver and P/O Stevens #6301 met with C/I 1349. C/I was checked for narcotics, USC and paraphernalia with negative results and given $100 PRBM (EK41747841A, JB64594258A, EA89277660B, JC86786621B, GF60289673D). C/I made contact with "Romeo" and agreed to meet. The C/I went to 26th and Dudley under a tree. A W/M was observed come out of 2627 Emily Street [sic] was identified by the C/I as the male he knew as Romeo. Romeo approached the C/I and they engaged in a brief conversation and the C/I handed Romeo the PRBM. Romeo then handed the C/I a clear packet. Romeo was then observed walk W/B on Mifflin. The C/I then handed over to P/O Stevens a clear zip lock packet containing a chunk of compressed white powder. The C/I checked for narcotics, USC and paraphernalia with negative results. That item tested positive for cocaine and was placed on PR# 3061629. Romeo was observed talk [sic] on a cell phone and he walked back to the tree where he met the C/I. A white Honda Civic was observed park [sic] under that tree and Romeo got into the passenger side. A W/M driver handed Romeo USC and Romeo handed the W/M driver a clear packet. Romeo exited the Honda and walked back to 2627 Emily and entered the front door.

On 8-24-12 P/O Cleaver and P/O Stevens met with C/I 1349. C/I was checked for narcotics, USC and paraphernalia with negative results and given $100 PRBM (JC30004608A, GL08921446A, IE5595364D, ED44111159C, GJ28611809B). The C/I made contact with Romeo and the C/I went to 26th and Dudley St. at the tree. Romeo was observed walk out of 2627 Emily St. He met the C/I and they engaged in a brief conversation. The C/I handed Romeo the PRBM and Romeo handed the C/I a clear packet. Romeo was observed walk back into 2627 Emily. The C/I then handed over to P/O Cleaver a clear zip lock packet containing a white compressed powder. The C/I was again checked for narcotics, USC and paraphernalia with negative results. The item tested positive for cocaine and placed on PR# 3061631. Based upon the above observations and the buys by the reliable C/I who in the past has made buys which led to numerous confiscations of narcotics, USC and paraphernalia, I respectfully request a Search and Seizure Warrant for 2627 Emily St.

Affidavit of Probable Cause, 8/24/2012.

On August 24, 2012, the day of the second controlled purchase, the warrant was approved and executed by police. Romeo Phillip Gagliardi, Romeo J. Gagliardi, and Valentino Gagliardi were inside the residence when the police executed the warrant. Each was arrested after the police searched the residence and found two pounds of marijuana, one hundred and thirty-six grams of cocaine, $9,682 in currency, a digital scale, a razor blade, a nine millimeter handgun, and indicia of residence for Romeo Phillip Gagliardi. All three individuals were charged with possession of a controlled substance with in-

tent to deliver, possession of an instrument of crime, and criminal conspiracy.[1]

On February 21, 2014, the Gagliardis made a joint oral motion before the trial court, seeking the suppression of the physical evidence obtained via the execution of the search warrant on 2627 Emily Street. Following a brief hearing, and considering only the material contained within the four corners of the affidavit, the trial court concluded that the search warrant was not supported by adequate probable cause. Thus, on that same date, the trial court granted the Gagliardi's motion and suppressed the evidence.

The Commonwealth presents the following question in this appeal: "Did the lower court err by invalidating a search warrant for a house on the ground that the police supposedly lacked probable cause despite arranging controlled buys in which a defendant was observed leaving the house, selling cocaine, and then returning to the house on two days in succession?" *See* Brief for the Commonwealth at 3.

The legal standards governing a review of this issue are well-established:

Our standard of review in addressing a challenge to the [grant] of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the [defendant] prevailed before the suppression court, we may consider only the evidence of the [defendant] and so much of the evidence for the [Commonwealth] as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclu-

sions are erroneous. *Commonwealth v. Bomar* [573 Pa. 426], 826 A.2d 831, 842 (Pa.2003). Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Mistler* [590 Pa. 390], 912 A.2d 1265, 1269 (Pa.2006) (quoting *Commonwealth v. Nester* [551 Pa. 157], 709 A.2d 879, 881 (Pa.1998)). Thus, the conclusions of law of the courts below are subject to our plenary review.

\* \* \*

Article I, Section 8 [of the Pennsylvania Constitution] and the Fourth Amendment [to the United States Constitution] each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds* [526 Pa. 374], 586 A.2d 887, 899 (Pa.1991) (quoting *Commonwealth v. Miller* [513 Pa. 118], 518 A.2d 1187, 1191 (Pa.1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge[,] and of which he has reasonably trustworthy information[,] are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Thomas* [448 Pa. 42], 292 A.2d 352, 357 (Pa. 1972).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request

1. 35 P.S. § 780–113(a)(30); 18 Pa.C.S. §§ 907, 903, respectively.

for a search warrant under the Fourth Amendment is supported by probable cause. In *Commonwealth v. Gray* [509 Pa. 476], 503 A.2d 921 (Pa.1986), [the Pennsylvania Supreme Court] adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates,* the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons who supply hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, nontechnical manner.

> \*      \*      \*

*Commonwealth v. Torres* [564 Pa. 86], 764 A.2d 532, 537–38 (Pa.2001) (emphasis added).

*Commonwealth v. Jones* [605 Pa. 188], 988 A.2d 649, 654–55 (Pa.2010) (internal citations modified).

Our cases require the Commonwealth to establish probable cause for the premises to be searched, and not only for the person suspected of criminal activity:

Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.... [A]n allegation based on an assumption or supposition not supported by the facts is insufficient to support (an inference of) criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

*Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361, 364 (1975); *see also Commonwealth v. Wallace,* 615 Pa. 395, 42 A.3d 1040, 1049–50 (2012) ("As the Superior Court has previously and aptly opined on this point, 'probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.'") (citing *Commonwealth v. Heyward,* 248 Pa.Super. 465, 375 A.2d 191, 192 (1977); *Kline,* 335 A.2d at 364))). "[T]he lack of a **substantial nexus** between the street crime and the premises to be searched renders the warrant facially invalid." *Commonwealth v. Way,* 342 Pa.Super. 341, 492 A.2d 1151, 1154 (1985) (emphasis added). Additionally, a magistrate's determination of probable cause "must be based [up]on facts described within the four corners of the supporting affidavit." *Commonwealth v. Dukeman,* 917 A.2d 338, 341 (Pa.Super.2007) (citing *Commonwealth v. Smith,* 784 A.2d 182, 184 (Pa.Super.2001)).

Here, stated simply, there is no information within the "four corners" of the affidavit of probable cause establishing any "nexus" between Emily Street and the drug dealing that occurred under the tree near 26th and Dudley Streets. *Way, supra.* There are ample facts in the affidavit to establish Romeo P. Gagliardi's identity and that he resides at 2627 Emily Street. However, the affidavit offers no factual

basis for concluding that Romeo P. Gagliardi's putative residence was connected to the drug dealing in any way. Although the affidavit offered significant factual bases for concluding that Romeo P. Gagliardi was a street drug dealer, "[p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home." *Way*, 492 A.2d at 1154.

Unlike the Majority, I believe that this Court's analyses in *Kline* and *Way* are instructive.[2] In *Kline*, the police obtained a search warrant for an apartment after eyewitness complainants identified the defendant as a drug dealer and indicated that the defendant lived in that particular apartment. Specifically, three different informants stated that they had purchased drugs from the defendant in the preceding week. Although the complainants stated that the defendant kept the drugs that he sold in his apartment, there was no factual basis in the affidavit to support that claim:

> [The suppression court] suppressed the evidence seized pursuant to the warrant because [the suppression court] conclud-

ed that although the affidavit contained facts sufficient to establish that [the defendant] was indeed dealing in drugs and lived in the apartment described, it did not contain facts sufficient to establish the basis [up]on which the several informants ... had concluded that [the defendant] had gone to his apartment to get the drugs.

*Kline*, 335 A.2d at 362–63. On appeal, this Court upheld the suppression court's ruling, stating that assumptions regarding the premises to be searched are insufficient to establish probable cause:

> Here, as far as appears from the affidavit, none of the informants said where the [drugs were.] The [informants] apparently concluded that [the drugs were] in [the defendant's] apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347, 350 (1973); *Commonwealth v. Soychak*, 221 Pa.Super. 458, 289 A.2d 119, 124 (1972). There is no indication of where the transaction took place, how long it took,

2. Subsequent decisions have distinguished somewhat our holding in *Kline* and, by extension, *Way*. Specifically, this Court has enumerated several types of evidence that are sufficient to establish the "substantial nexus" between the place to be searched and the evidence to be seized. *See Commonwealth v. Davis*, 407 Pa.Super. 415, 595 A.2d 1216, 1220–22 (1991) (holding that confidential informant's observation of a defendant coming and going from a specific house between three different narcotics sales and had recently obtained a large shipment of narcotics established "probable cause to believe that the objects sought ... would be found in [the defendant's] home.") (discussed *infra*); *Commonwealth v. Macolino*, 336 Pa.Super. 386, 485 A.2d 1134, 1136–38 (1984) (holding that police established probable cause to search a home where the affidavit of probable cause contained information from wiretapped conversations emanating from the house discussing narcotics trafficking, and police surveil-

lance of the property, wherein the defendant was observed coming and going from that house while meeting with a known narcotics supplier); *Commonwealth v. Frye*, 242 Pa.Super. 144, 363 A.2d 1201, 1204 (1976) (holding that a defendant's admission may form the basis for establishing probable cause to search a specific locale, stating that "the nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.").

I read these cases as standing for the general proposition that, while the Commonwealth must establish a nexus between the place to be searched and the items to be seized, that burden is not insurmountable. However, the central holding of *Kline* and *Way*—that mere evidence of a suspect's criminal activity and the location of his residence does not establish probable cause to search that residence—remains in force.

how long [the defendant] was gone, or what led the [informants] to conclude that [the defendant] had gone to his apartment. The information from the confidential informant does not corroborate their conclusion that [the defendant] kept drugs in his apartment, even though it does tend to establish that [the defendant] was a drug dealer.

*Id.* at 364 (internal citations modified). Thus, the mere fact that an affidavit of probable cause tends to establish the criminal activity of a defendant, and the location of his home, does not provide probable cause to support the issuance of a search warrant for that home.

The Majority attempts to distinguish *Kline* upon the basis that, here, "we are dealing with two controlled transactions" that were observed by the police and set forth in the affidavit of probable cause. *See* Maj. Op. at 798. However, the number of transactions that occurred on the street is entirely irrelevant. The crux of *Kline* is that the affidavit failed to establish a nexus between the residence and the drug transactions that occurred outside of the residence. It does not matter if the police observe ten, twenty, or even one hundred transactions on the street unless they can establish a nexus between those transactions and the home. Clearly, the facts that the police observed two transactions and then wrote about them in the affidavit of probable cause do not, *ipso facto,* remove this case from *Kline*'s command.

Moreover, the Majority entirely omits to discuss *Kline*'s requirement that an affidavit of probable cause must address **how** an informant or a police officer in conjunction with the informant concluded that additional drugs were secreted in the residence in question. *See id.* at 364. Under *Kline,* the number of transactions or the fact that a person lived at a particular residence is insufficient to satisfy that mandate. Indeed, for all practical purposes, the Majority concludes that the relevant nexus existed based only upon the facts that drug transactions occurred on the street and that the actor lived in the residence to be searched, which is precisely what *Kline* held to be insufficient for purposes of establishing probable cause.

In *Way,* this Court relied upon *Kline* to suppress evidence seized pursuant to a search warrant in a narcotics case:

The facts fairly summarized are that the informant arranged a drug transaction by phone. The alleged transaction occurred in a blue van along a country road. After the alleged transaction, police followed the blue van to a driveway of a property at the corner of Douglas Dr. and Glendale Rd. The informant identified appellant as the driver of the blue van. A police source told the affiant that appellant lived at the intersection of Douglas Dr. and Glendale Rd.

*Way,* 492 A.2d at 1154. The trial court concluded that the search warrant was supported by probable cause. On appeal, this Court reversed, concluding that, "within the four corners of the affidavit, we fail to find sufficient facts to permit an issuing authority reasonably to conclude that there was contraband in the premises to be searched." *Id.*

Once more, the Majority attempts to distinguish *Way* because the affidavit of probable cause demonstrated that the actor's "base of operations" was a van, and not the residence. *See* Maj. Op. at 798. That may be true, but the factual difference between *Way* and the instant case is immaterial. *Way* stands for the same proposition as *Kline,* that the affidavit of probable cause must establish a nexus between the illegal behavior and the residence to be searched. In *Way,* the affidavit did not make that showing regarding

the residence. Here, the affidavit similarly does not demonstrate a nexus between the street activity and the Gagliardi home.

Examining the totality of the circumstances, I find no factual averments in the affidavit that establish any "nexus" between Romeo P. Gagliardi's home and his drug transactions on the street. Within its four corners, the affidavit establishes only probable cause to believe that Romeo P. Gagliardi sold drugs and lived at the subject residence. Consequently, *Kline* and *Way* are analogous to the present case: "[T]he lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid." *Way*, 492 A.2d at 1154; *see Kline*, 335 A.2d at 364.

As noted earlier, probable cause must be assessed utilizing a common sense standard. *See Jones, supra*. However, common sense is not the same as guesswork. A court cannot fill in factual gaps in pursuit of a result that might be dictated by common sense. To determine here that probable cause existed for the residence in question based only upon the facts contained within the four corners of the affidavit would require me, through conjecture and surmise, to supply facts that simply are not in the affidavit. The Majority concludes that the affidavit creates a fair probability that Romeo Gagliardi was using 2627 Emily Street as his "**base** of illicit operations." Maj. Op. at 797 (emphasis in original). There are no facts in the affidavit to support this conjecture. The Majority relies only upon the facts that twice Gagliardi left his home to sell drugs and returned thereafter. But, there is no way to know with any reasonable amount of certainty that any other illicit behavior was going on inside the home.

We can only guess as to what occurred once Gagliardi returned to his residence,

an endeavor that we are prohibited from pursuing. There is not a single fact to suggest that additional drugs were inside the home, that Gagliardi was selling drugs from the home, or that he did anything other than live there. We cannot find probable cause simply because we think we know what went on inside the home. There must be facts or averments that a court can point to in the affidavit to support such a conclusion. I see none in the affidavit here. Without more information, I cannot conclude that a sufficient basis exists to warrant a magistrate to conclude that a nexus exists to establish probable cause between the actions observed on the street and 2627 Emily Street.

As a final matter, I must address *Commonwealth v. Davis*, 407 Pa.Super. 415, 595 A.2d 1216, 1220–22 (1991), a case cited by the Commonwealth and one that bears facial similarities to the case *sub judice*. In *Davis*, a confidential informant informed police that Davis sold drugs in the area of the William Penn Project in the Chester, Pennsylvania. The informant described Davis, and told the police that Davis lived at 408 Pancoast Place, which is located in the William Penn Project. The informant observed Davis make three individual drug transactions in the William Penn Project, and then immediately return to 408 Pancoast Place. Finally, the informant indicated that Davis had received a shipment of "a couple of ounces of cocaine" within forty-eight hours of providing the information to police. *Davis*, 595 A.2d at 1218. Police incorporated this information into an affidavit of probable cause and applied for a search warrant. The application was granted, and the officers executed the warrant on the house. The search resulted in the confiscation of drugs, money, and drug paraphernalia. *Id.*

Davis filed a suppression motion alleging, *inter alia*, that the warrant issued

without adequate probable cause. The trial court granted the motion, and the Commonwealth appealed. Finding that the affidavit contained sufficient probable cause to support the warrant, this Court reversed the trial court's suppression ruling. *Id.* at 1219.

In so ruling, the *Davis* Court cited, *inter alia, Kline and Way*, but distinguished those cases because the affidavit contained more facts to establish a nexus between Davis' drug sales in the William Penn Project and 408 Pancoast Place than were present in *Kline* and *Way*. The Court noted that Davis had been observed leaving and returning to the house, which supported the inference that he lived there. He also was observed actually selling drugs in the area of the residence three times, and then returning to the residence immediately thereafter. Finally, the panel noted that "the confidential informant was told by Davis that he had 'just recently' obtained 'a couple of ounces of cocaine.' This also occurred within 48 hours prior to obtaining the warrant to search [Davis'] home." *Id.* at 1221.

*Davis* is inapposite. Like the defendant in *Davis*, Romeo P. Gagliardi was observed making drug sales outside of his home and returning to the home shortly thereafter. However, *Davis* is distinguishable because Davis had just recently received a substantial shipment of cocaine. The quantity of cocaine was large enough to support the inference that the drugs necessarily were being stored in the home, primarily because it would be impractical to carry such a quantity on one's person. That additional factor is what set *Davis* apart from *Kline* and *Way*. Instantly, there is no indication in the affidavit of probable cause that Romeo P. Gagliardi had received a recent shipment of narcotics. Hence, *Davis* is distinguishable, and

does not control this case. *Kline* and *Way* control.

In my view, the trial court's ruling was supported by the evidence of record and was not in error. The trial court correctly ruled that the search was unconstitutional. The evidence should remain suppressed. Because the Majority concludes otherwise, I respectfully dissent.